**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JACK DUANE HALL,

        Petitioner,                      Case Number: 2:07-CV-12163

v.                                            HON. BERNARD A. FRIEDMAN

MARY BERGHUIS,

        Respondent.
_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS AND (2) DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY

Petitioner Jack Duane Hall has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at the G. Robert Cotton Correctional Facility in Jackson, Michigan, challenges his conviction for kidnapping. For the reasons set forth below, the Court denies the petition.

**I.**

Petitioner's conviction arises from events that occurred on April 7, 1993 in Clio, Michigan. The Michigan Court of Appeals summarized the facts relevant to Petitioner's conviction as follows:

> Defendant's conviction arises out of the 1993 rape, robbery and kidnapping of the victim as she was leaving work. Defendant accosted her in the parking lot as she was walking to her car and forced her at gun and knife point to a nearby wooded area. Defendant handcuffed her to a tree and sexually assaulted her. Defendant fled the scene, taking with him the complainant's underwear, driver's license, social security card, wedding rings, and computer (which the victim had been carrying out to her car at the time of the attack).
>
> The crime remained unsolved until 1999 when a witness, Larry Shetron, who had been jogging in the area at the time of the attack, saw defendant's photograph and

> contacted the police, indicating that he thought defendant was the person he had seen in the area of the attack. This tip prompted the police to compare DNA from a blood sample obtained from defendant under a search warrant to semen samples from the victim's vagina and clothing. Defendant's DNA matched five genetic locations from the semen stains, with the odds of someone other than defendant being the source of the semen being one in thirty billion for the Caucasian population.
>
> Meanwhile, defendant was a suspect in an unrelated case. A search warrant for a storage unit was executed in that case, during which the computer stolen in the case at bar was discovered, further linking defendant to the attack in this case. A search was also conducted in defendant's apartment, which yielded clothing similar to that involved in the attack, but which the victim could not positively identify. A gun was also found, which, like the clothing, the victim said "could very well be" the gun used in the attack, but could not positively identify it as the weapon used.

*People v. Hall*, No. 233564, slip op. at 1 (Mich. Ct. App. May 22, 2003).

## II.

Following a jury trial in Genesee County Circuit Court, Petitioner was convicted of kidnapping. On March 21, 2001, he was sentenced to life imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals. He raised the following claims through counsel:

    I.    Defense trial counsel was constitutionally ineffective in failing to move to suppress a photograph of the serial number on a computer found during execution of an unrelated search warrant for Defendant's storage locker, where the police did not seize the computer because it was outside the scope of the warrant, it was not immediately apparent that the computer was evidence of a crime, and the police moved the computer to discover the serial number.

    II.    Defense trial counsel was constitutionally ineffective in failing to move to suppress a gun and ski mask found during execution of an unrelated search warrant for Defendant's apartment, as well as testimony about the sale to Defendant of a gun, where the warrant was overbroad, the items were outside the scope of the warrant, and it was not immediately apparent that the items were evidence of a crime.

Petitioner raised the following additional claims in a *pro per* supplemental brief:

    I.       Where all the charges arose out of the same criminal transaction, defense counsel was ineffective for failing to object when the State divided the charge of kidnapping from the first-degree criminal sexual conduct and felony firearm charges, and the prosecutor tried the Defendant for kidnapping, which violated the Double Jeopardy Clause of the Fifth Amendment.

    II.      Defense counsel was ineffective by allowing the prosecutor and the judge to violate the Defendant's rights on the statute of limitation defense, by allowing the prosecutor to prove the first-degree criminal sexual conduct and felony firearm which were dismissed, in order to secure a conviction on the kidnapping charge, which put the Defendant in jeopardy.

    III.     Defendant was deprived of his right to the effective assistance of counsel, guaranteed by the United States and Michigan constitutions, by the deficient performance of trial counsel that denied him a fair trial.

    IV.     Defense counsel was ineffective for failing to move to suppress Larry Shetron's in court identification tainted by photographs in newspapers and by prior identification at preliminary examination.

    V.      Defense counsel was ineffective for failing to object to the prosecutor's reference to evidence that was never presented to the jury.

    VI.     The cumulative effect of the errors justifies reversal.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Hall*, No. 233564 (Mich. Ct. App. May 22, 2003).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised before the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Hall*, No. 124680 (Mich. March 30, 2004).

Petitioner filed a motion for relief from judgment in the trial court. He raised the following claims: (i) appellate counsel was ineffective for failing to raise additional claims in the appeal of rights; (ii) the 50-page brief limitation of M.C.R. 7.212(B) imposed an unconstitutional limitation on the ability to raise additional issues in appeal of right; (iii) evidence obtained as a result of the search of Petitioner's apartment and storage locker should have been suppressed;

(iv) DNA results should have been suppressed; (v) ineffective assistance of trial counsel; and (vi) sentence disproportionate. The trial court denied the motion for relief from judgment. *People v. Hall*, No. 00-007132-FC (July 9, 2004).

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, raising the following claims:

> I. Where the Michigan Court Rules Chapter 6.500 et seq. provided only a facial avenue, appellant should be entitled to relief from judgment on his collaterally raised claims.
>
> II. Mr. Hall was denied his Sixth Amendment right to effective assistance of counsel guaranteed by the United States Constitution when counsel failed to object to the state dividing the charges.
>
> III. The Court of Appeals failure to render a decision on the merits using law of the land to justif[y] [their] findings in the issues raised on Mr. Hall's appeal of right denied Mr. Hall his due process right guaranteed by the Fourteenth Amendment of the United States Constitution.

The Michigan Court of Appeals denied leave to appeal. *People v. Hall*, No. 263457 (Mich. Ct. App. Jan. 23, 2006).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the following claim:

> Where the Michigan Court Rules Chapter 6.500 et seq. provided only a facial avenue, appellant should be entitled to relief from judgment on his collaterally raised claims.

The Michigan Supreme Court denied leave to appeal. *People v. Hall*, No. 130679 (Mich. June 26, 2006).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the following claims:

> I. Ineffective assistance of appellate counsel.

4

    II.      Search and seizure

           A.      Probable cause to issue search warrants.

           B.      Affidavits overbroad, evidence seized outside the warrant.

               1. Plain view, immediately apparent.

           C.      False statements in the DNA warrant application.

               1. Fruit of the poisonous tree.

           D.      *Stone v. Powell* preclusion

               1.      Full and fair hearing.

               2.      Deterrent principles.

    III.     Identification

           A.      Independent basis.

    IV.     Judge's abuse of discretion

           A.      Circuit Court Judge Neithercut

    V.      Appeal of Right.

    VI.     Ineffective assistance of trial counsel.

           A.      Search and seizure.

           B.      Fairness and accuracy of the verdict.

           C.      Preliminary examination.

           D.      Circuit Court.

### III.

Section 2254(d) of Title 28 U.S.C., imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410-11.

Where a claim is fairly presented in state court, but the state court, although denying the claim, fails to address it, a federal court on habeas review must conduct an independent review of the state court's decision. *Harris v. Stovall*, 212 F.3d 940 (6th Cir. 2000). This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law,

or is based on an unreasonable determination of the facts in light of the evidence presented." Id. at 943.  However, the independent review "is not a full, *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." Id.

## IV.

### A.

Petitioner raises several Fourth Amendment claims and argues that his trial and appellate attorneys were ineffective in failing to raise all of his Fourth Amendment claims.  Petitioner argues that counsel should have argued that the search warrants were not supported by probable cause, the warrant for DNA evidence relied upon false testimony, and that counsel should have moved to suppress the gun and ski mask and the fact that the victim's computer was found in Petitioner's storage unit.

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Stone v. Powell*, 428 U.S. 465, 494-95 (1976).  The Sixth Circuit Court of Appeals utilizes a two-step analysis to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court:

> First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim.  Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.

*Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (internal quotations omitted).

Petitioner does not allege that presentation of his Fourth Amendment claim was

frustrated by a failure of the state procedural mechanism for presenting such claims. Instead, he argues that his trial attorney was ineffective for not raising these claims. Thus, Petitioner had an *opportunity* to raise a Fourth Amendment claim in state court, and his Fourth Amendment claim is not cognizable on federal habeas review.

The Court next considers Petitioner's claim that his trial attorney was ineffective in failing to raise the Fourth Amendment claim in state court. The *Stone v. Powell* doctrine does not bar federal habeas review of a Sixth Amendment claim challenging defense counsel's failure move for the suppression of evidence that should have been excluded under the Fourth Amendment. *Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

The Supreme Court emphasized that, when considering an ineffective assistance of counsel claim, the reviewing court should afford counsel a great deal of deference:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties

8

> inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689 (internal citations omitted).

The Court further explained that, to establish deficient performance, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The Sixth Circuit, applying the *Strickland* standard, has held that a reviewing court therefore must focus on whether counsel's alleged errors "have undermined the reliability of and confidence in the result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996), *cert. denied* 520 U.S. 1257 (1997). Where a Sixth Amendment violation is claimed in the context of counsel's failure to present a Fourth Amendment claim, the petitioner must show that the Fourth Amendment claim is meritorious. *Kimmelman*, 477 U.S. at 382.

On direct appeal, the Michigan Court of Appeals considered whether trial counsel was ineffective in failing to move to suppress items discovered pursuant to the search warrants, a gun and ski mask. The state court concluded that a reasonable likelihood did not exist that, had the items been suppressed, the result of the proceeding would have been different. *Hall*, slip op. at 3. The state court reasoned that the value of the gun and ski mask were minimal because the victim did not identify these items as the same ones used in the attack against her and there existed unrelated significant evidence against Petitioner, including identification testimony and incriminating DNA evidence. *Id.* Because the state court determined there was no reasonable

9

likelihood that suppression of the evidence obtained pursuant to the challenged search warrants would have yielded a different result, Petitioner cannot show that he was prejudiced by his attorney's failure to raise this issue.

With respect to Petitioner's claim that his attorney should have moved to suppress evidence that the victim's computer was found in Petitioner's storage unit, the Michigan Court of Appeals held that Petitioner failed to establish that a motion to suppress the computer evidence would have been successful. Police found a computer in the storage unit, but did not seize it because it was not listed on the warrant. Instead, police photographed the serial numbers on the computer and mouse. The serial numbers matched those of the computer stolen from the victim. Petitioner argued that police had to move the computer equipment to allow them to see the serial number, and that the evidence should be suppressed pursuant to *Arizona v. Hicks*, 480 U.S. 321 (1987). In *Hicks*, the Supreme Court held invalid the seizure of stolen stereo equipment found by police while executing a valid search for other evidence. Police were lawfully on the premises, but obtained probable cause to believe that the stereo equipment was stolen only after moving the equipment to allow officers to see the serial numbers. The Court held that the plain-view doctrine did not justify the subsequent seizure of the equipment because the incriminating nature of the stereo equipment was not immediately apparent. *Id.* at 324-26. The Court noted that if the officers had been able to see the serial numbers without moving the equipment, the recording of serial numbers would not have been considered a seizure. *Id.* at 324. The Michigan Court of Appeals held that Petitioner failed to establish a violation under *Hicks* because he failed to show that the serial numbers were not visible absent the moving of the equipment, and, consequently, failed to show that his attorney was ineffective in failing to move

to suppress the computer on this ground *Hall*, slip op. at 5. In addition, the state court held that, even assuming that a motion to suppress would have been successful, Petitioner could not satisfy the prejudice prong of *Strickland* based upon the strength of the evidence against Petitioner. Because Petitioner has failed to show that this Fourth Amendment claim was meritorious, he has failed to show that trial counsel was ineffective in failing to file such a motion. Moreover, he has failed to show that the state court's conclusion that Petitioner did not satisfy *Strickland's* prejudice prong was an unreasonable application of *Strickland*.

Petitioner also argues that counsel should have argued that the search warrants were not supported by probable cause. As discussed above, Petitioner has failed to satisfy the prejudice prong with respect to this ineffective assistance of counsel claim. Therefore, he has failed to show that counsel was ineffective in this regard.

Petitioner argues that counsel should have challenged the warrant for DNA evidence because it was based upon false testimony. Respondent argues that this claim is procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S. Ct. 1517, 1523 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525, 117 S. Ct. at 1523. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

Petitioner asserts that his attorney should have challenged the admissibility of the DNA evidence on the ground that the warrant was based upon false testimony. He further argues that

11

testimony comparing his DNA to that recovered from the victim should have been suppressed under the "fruit of the poisonous tree" doctrine. Defendant's unsupported claims of false information are insufficient to establish a basis for a motion to suppress, and certainly do not establish that it would be outside the range of professionally competent assistance not to file a motion to suppress on that basis. *Cf. United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000) ("A motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented," and "[a] court need not act upon general or conclusory assertions."), *citing United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985). Therefore, Petitioner has not shown that counsel was ineffective in failing to file a motion to suppress the DNA evidence

**B.**

Next, Petitioner argues that Larry Shetron's in-court identification of Petitioner should have been suppressed and that counsel's failure to move for its suppression was ineffective.

"A conviction based on identification testimony that follows a pretrial identification violates the defendant's constitutional right to due process whenever the pretrial identification is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994). A court must undertake a two-step analysis to determine the validity of a pretrial identification. First, the court must determine whether the procedure was unduly suggestive. If the court finds that the procedure was unduly suggestive, the court must then "evaluate the totality of the circumstances to determine whether the identification was nevertheless reliable." *Id.* Where an in-court identification was potentially impacted by an impermissibly suggestive pretrial identification

12

procedure, the governing test is whether "under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Neil v. Biggers*, 409 U.S. 188, 199 (1972).

The Michigan Court of Appeals held that the in-court identification was not impacted by an impermissibly suggestive pretrial procedure, stating, in pertinent part:

> Defendant's next claim of ineffective assistance of counsel is that counsel failed to move to suppress Larry Shetron's in-court identification of defendant. Shetron saw defendant's photograph in a newspaper in 1999. He then contacted the police and told them that defendant looked like the person he saw on the day of the 1993 attack against the victim. Defendant's argument is without merit for a number of reasons. First, defendant challenges the in-court identification of him at the preliminary examination. Evidentiary errors committed at a preliminary examination do not require reversal absent a showing that the error prejudiced the defendant at trial. *People v Hall*, 435 Mich 599; 460 NW2d 520 (1990). Second, defendant fails to show how Shetron's identification of defendant was in any way tainted. The newspaper photograph Shetron saw of defendant did not identify defendant as a suspect in this case. Rather, it is Shetron's observation of the photograph which led him to contact the police and to defendant's becoming a suspect in this case. Accordingly, defendant has made no showing that a different result would have occurred had counsel made such a motion.

*Hall*, slip op. at 5-6.

The Court concludes that the state court's determination that the identification procedure was not impermissibly suggestive was not contrary to or an unreasonable application of Supreme Court precedent. Moreover, even assuming that the identification procedure was impermissibly suggestive, Petitioner has failed to show the identification was not reliable. Shetron testified that he had the opportunity to see the man in the middle of the afternoon. He testified that he believed he had gotten a good enough look at the man that he would be able to recognize him should he see him again. Shetron also testified that the man asked him some questions, suggesting they were close enough in proximity to have a conversation. Shetron was able to

13

estimate the individual's weight and describe his clothing. Accordingly, he fails to show that he was prejudiced by his attorney's failure to raise this claim.

**C.**

In his fourth claim, Petitioner argues that the trial court abused its discretion and violated Petitioner's right to be free from double jeopardy when it allowed the prosecutor to divide the kidnapping charge from the criminal sexual conduct and felony-firearm charges. The criminal sexual conduct and felony-firearm charges were dismissed at the preliminary examination, on defendant's motion, because the statute of limitations had expired.[1]

The Double Jeopardy Clause of the Fifth Amendment provides, "No person . . . shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. This clause affords defendants protection against three basic harms: second prosecution for the same offense after acquittal, second prosecution for the same offense after conviction, and multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977). "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature . . . , the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984). "Where . . . a legislature specifically authorizes cumulative punishment under two statutes for the same conduct, regardless of whether those two statutes prescribe the 'same' conduct, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v.*

---

[1] M.C.L. § 767.24 was amended April 2002, and now provides for no limitation period regarding prosecutions for first-degree criminal sexual conduct.

*Hunter*, 459 U.S. 359, 368-69 (1983).

The Michigan Court of Appeals' characterized Petitioner's double jeopardy claim as "frivolous" and held that the separation of charges was appropriate. *Hall*, slip op. at 5. The state court noted that only a single prosecution arose out of the criminal transaction at issue in this case. This Court agrees. Petitioner was originally charged with criminal sexual conduct, kidnapping, and felony firearm. The fact that the statute of limitations expired on two of the three charges does not render the subsequent prosecution on the third charge violative of double jeopardy. *Accord U.S. v. Pi*, 174 F.3d 745, 749 (6th Cir. 1999) (holding that "[d]ismissal of an indictment prior to trial simply does not raise any double jeopardy issues"). Therefore, counsel's failure to object on this basis was not ineffective.

**D.**

In his fifth claim for relief, Petitioner essentially argues that the Michigan Court of Appeals was incorrect in its resolution of each of the claims raised through counsel and *pro per* on direct appeal, and incorrect in denying his motion to remand for an evidentiary hearing and his motion for reconsideration. The Court addresses each of Petitioner's claims, in turn, herein, and finds no error warranting habeas corpus relief. In addition, to the extent that Petitioner claims that the state courts erred in their application of Michigan Court Rule 7.211, violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable claims under 28 U.S.C. § 2254. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Whether the Michigan courts erred in their application of M.C.R. 7.211 in denying Petitioner's motion for an evidentiary hearing is a question of state law that cannot be reviewed in a federal habeas petition. *See Hayes v. Prelesnik*, 193 Fed. Appx. 577, 584 (6th Cir. 2006). Moreover,

there is no clearly established Supreme Court law which recognizes a constitutional right to a state court evidentiary hearing to develop a claim of ineffective assistance of counsel on appeal. *Id.* Similarly, Petitioner's claim that the state court erred in denying his motion for reconsideration fails to allege the denial of a federal constitutional right. Accordingly, this claim is not cognizable on federal habeas review.

To the extent that Petitioner argues that the cumulative effect of the alleged errors warrants habeas corpus relief, this claim also is without merit. The Sixth Circuit has expressed doubt that about the validity of the argument that cumulative errors may warrant habeas relief in the post-AEDPA era. *See Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief"); *Moore v. Parker,* 425 F.3d 250 (6th Cir. 2005) (same). Additionally, even if such a claim could merit habeas relief, the Court does not find that errors were committed when considered separately or together that abridged the petitioner's constitutional rights.

**E.**

Petitioner argues that his appellate attorney was ineffective in failing to raise certain claims in Petitioner's appeal of right. Specifically, Petitioner argues that appellate counsel: (i) should have challenged the validity of the affidavits that formed the basis for the search warrants and whether the affidavits established probable cause; (ii) failed to ask Petitioner where his computer was located in the storage unit; (iii) failed to challenge the DNA search warrant; (iv) failed to argue that false information was used in the photographic line-up related to Kalyee Wert's identification of Petitioner; (v) failed to argue that the trial court erred in dividing the underlying crime into several lesser-included offenses; and (vi) failed to challenge Larry

Shetron's in-court identification of Petitioner.

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

While a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal, *Jones*, 463 U.S. at 754, appellate counsel *is* charged with "winnowing out weaker arguments on appeal and focusing on those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (internal citation omitted). Affording appellate counsel a great deal of discretion in determining which issues to raise on appeal and which to withhold does not mean that all such decisions made by appellate counsel are beyond reproach. *Jones* does not absolve appellate counsel of the duty to exercise reasonable professional judgment in presenting claims on direct appellate review. The presumption of effective assistance of appellate counsel may be overcome only when ignored issues are clearly stronger than those presented. *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986), *cited with approval in Robbins*, 528 U.S. at 765. "An appellate advocate may deliver deficient performance and prejudice a defendant by omitting a 'dead-bang winner,' even though counsel may have presented strong but unsuccessful claims on appeal." *U.S. v. Cook*, 45 F.3d 388, 395 (10th Cir.

1995) (*quoting Page v. U.S.*, 884 F.2d 300, 302 (7th Cir. 1989)). *See also Coddington v. Langley*, 202 F. Supp. 2d 687, 698 (E.D. Mich. 2002) ("A 'dead-bang winner' has been defined as 'an issue which was obvious from the trial record.'") (*quoting United States v. Cook*, 45 F.3d 388, 395 (10th Cir. 1995)).

The trial court is the last state court to issue a reasoned opinion regarding Petitioner's ineffective assistance of appellate counsel claims. The trial court held that Petitioner failed to establish his appellate attorney's ineffectiveness, stating, in relevant part:

> This Court is not persuaded that Defendant was denied effective assistance of counsel on appeal. Defendant made no showing that his counsel's performances were unreasonably deficient as required by *Strickland* and *Reed*. This Court determines that the mere fact that Defendant's appellate attorney determined that the current issues were not legally significant is not a sufficient showing of good cause to this Court. "Appellate counsel's decision to winnow out weaker arguments and focus on those more likely to prevail is not evidence of ineffective assistance." [*People v. Reed*, 449 Mich. 375, 391 (1995).] Furthermore, "(a)ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Murray v. Carrier*, 477 U.S. 478, 488 (1986).
>
> It is clear to this Court that the use of such a vague accusation against an appellate attorney would turn the basis for the good cause requirement on its head. The purpose behind the subsections of MCR 6.500 is to compel a defendant to raise all known issues in his appeal of right to avoid taxing judicial resources with unnecessary successive appeals. If all defendants were able to satisfy the good cause requirement by merely concluding ineffective assistance of appellate counsel, the requirement would be rendered moot.

*Hall*, slip op. at 3-4.

Petitioner has failed to show that any of the claims not raised by appellate counsel had any merit. Therefore, he cannot establish that he was prejudiced by counsel's failure to raise these claims and the state court's decision denying relief on this claim was not contrary to or an unreasonable application of *Strickland* or *Jones*.

**V.**

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or it may wait until a notice of appeal is filed to make such a determination. *Castro v. United States,* 310 F.3d 900, 903 (6th Cir. 2002). In deciding to deny the habeas petition, the Court has, of course, studied the case record and the relevant law, and concludes that it is presently in the best position to decide whether to issue a COA. *See Id.* at 90 (*quoting, Lyons v. Ohio Adult Parole Auth.,* 105 F.3d 1063, 1072 (6th Cir. 1997) ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,' the district judge is, at that point, often best able to determine whether to issue the COA.") (overruled on other grounds).

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must "show . . . that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the court's conclusion that the petition does not present any claims upon which habeas relief may be granted. Therefore, the Court will deny a certificate of appealability.

## VI.

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

S/Bernard A. Friedman  
BERNARD A. FRIEDMAN  
UNITED STATES DISTRICT JUDGE

DATE:  July 27, 2009

I hereby certify that a copy of the foregoing document  
was served upon counsel of record by electronic and/or first-class mail.

S/Carol Mullins  
Case Manager